Mr. Patrick, when you're ready. Thank you, Your Honor. I am Michael Patrick from Chapel Hill. I represent the Defendant Diaz in this case. This, of course, was a case arising out of the Eastern District of charges relating to money laundering, that is, conspiracy and a specific money laundering allotment. You may have to pull that microphone a little bit closer. I want to be sure I catch everything you say. Yes, sir. My client was indicted on four counts in the Eastern District and ultimately tried and convicted on, well, he was indicted on more than four things, but he was ultimately tried and convicted on four counts. Two of them involved money laundering. Two of them involved cocaine and marijuana distribution. There was a conspiracy and a substance of count on each of those. I'd like to turn first to the money laundering issues that we raised in our brief. Can I ask you a question first? It's getting a little bit out of track, but I'm just trying to clarify. What is your objection as it pertains to count one? This is a conspiracy to distribute. You sort of make a generalized complaint about that and then you mention the failure to charge willfulness. Yes, sir. You're talking about the drug distribution. The conspiracy to distribute, right, count one. Yes, sir. I know I'm catching you a little bit out of what you're going to argue. You are. I was going to deal with those matters last, but I'll try to answer your question. We, of course, did not challenge any question of whether there was substantial evidence on the drug charges. There's many people who testified about a lot of different things. Just to simplify, are you making any objection other than the failure to charge willfulness? We are raising on the money laundering conspiracy part of it an objection to the failure to mention the interstate commerce element of the offense. I think we cited the ARAMI case under the But does that go to count one? No, sir. It goes to the substantive But I'm just asking, is there any other specific count, any other specific objection to count one other than the failure to charge willfulness? That is the main issue there. There was not a real explanation to the jury, I think, in the instructions on the quantity or the weight of the drugs that needed to be found. That's another question now as far as sort of where the sentence would have to go. That's right. Yes, sir. You raised something about a government agent, but does that concern about the government agent in a conspiracy, does that go to the conspiracy, the money launderer? Yes, sir. Okay. All right. Thank you very much. I may get back to it, but I'll let you go back. All right. Well, turning back to the money laundering charges, the main argument we made on the money laundering, on the conspiracy part of it, was that the settled law is that you cannot conspire with a government agent. The facts in this case showed that at the time of the charged money laundering, which occurred in November of 2010, the longtime associate of Mr. Diaz, Cox, had been arrested and agreed to participate. And the dealings that the government talked about after that as to the money laundering charge had to do solely with Mr. Cox and then also government agent Carucci, who I believe was a DEA agent. And our main argument on the money laundering conspiracy charge was that as to that charge, there was really no evidence that anybody else was involved with that $19,010. It was a promotion scheme. The money was supposed to mostly go to buying a trailer to transport drugs. And the only people that the evidence showed knew about that purpose and that conspiracy and who were involved in that are the two government agents, in addition to my client. But to Boris Castillo, he was in that conspiracy. No, he was certainly in the drug conspiracy from the evidence, Your Honor, but there was no evidence that he had any conversations having to do with that particular transaction. Right. What I'm saying is there isn't any specific requirement that, are you suggesting there's a conspiracy that exists between Tavaris Castillo, Cox, and your client on other, on a conspiracy of transportation of drugs, money laundering, where your client, using that loosely, buys an article, buys a boat, and it's taken down to Tavaris, who then puts drugs in it. He buys a trailer, I think it was the Fifth Avenue, and that's done. Why isn't this just a continuation? Why couldn't a jury find this to be a continuation? There is clearly an ongoing drug conspiracy that the evidence would suggest that Mr. Correo What about a, no, but what about a promotional money laundering conspiracy where money is used to buy those items that are taken to Tavaris for drugs to be hidden in? Well, there is not any real clear evidence about what exactly went on with the earlier, I mean, there was a Fifth Avenue trailer and a boat that was taken down there. We really don't know how those were purchased, whether they had been Mr. Diaz's or Mr. Cox's for many years and used for camping and not recently. The government's evidence really doesn't go into that. They focus really on the $19,000 that was used to buy this specific trailer. The government indicted the case the way they indicted it, and I think they have to prove the conspiracy they brought in this particular case. And if you look at the facts surrounding that... You think the government fails, I want to be sure I understand this, you think the government fails because there's no evidence that as to that boat and as to the Fifth Avenue trailer, there's no evidence from which Tavaris knew that had been bought or could reasonably have known that was bought with drug proceeds? I think there was no evidence showing that he had discussed the acquisition of the trailer. Which trailer? The one that was bought... Fleetwood? Yes, the one that was bought with the $19,000. I know, but I'm asking. That's not required, is it? I think if you look at what the jury instructions are to join that conspiracy, they have to have a knowledge of the purpose of the conspiracy. And the conspiracy that they were talking about in those charges is the acquisition of that specific trailer. But you're saying that... Let me just say this. I want to be sure I understand your position. That if Tavaris Castillo, if there was evidence which a jury could find that he knew that your client, among others, your client, was taking drug proceeds and using them to buy the boat for Tavaris to put drugs in, and the Fifth Avenue trailer, if he knew that, I'm just saying accept that, that he knew it, that they also have to prove there had been a discussion between your client and Tavaris in that conspiracy on this specific trailer? The Fleetwood? You know, if there was ongoing money laundering conspiracy where this was just one example of it, I would tend to concede that. But that's not the way this was charged. And I don't believe the evidence shows that there was that kind of discussion that was had. I don't want to belabor that anymore. I'm going to ask the Governor the same question. Okay. Thank you. Thank you, Your Honor. So, you know, I would have to concede on the substantive money laundering count that although I think I'll argue this a bit differently in my brief, I think that if you look at it as an attempt case, clearly my client giving the $19,000 to the government agents with a discussion about acquiring that trailer, that's probably going to be under the case law sufficient for an attempt. So I'm not going to argue that here. So our primary argument is on the money laundering conspiracy, that there's just not sufficient evidence to show that somebody other than a government agent was involved in that, and under the case law, that's not sufficient to convict my client of conspiracy. Moving on to the other charges which involve drug distribution, there was a substantive count as well as a conspiracy. The problems that arose in this case really had to do with, you know, I don't know what exactly was going on during the trial. It looked like there was a lot of problems with weather and other things, and Judge Boyle was in a hurry to get the case over. But there was a very, very, like, 30-second charge conference, and then there were multiple problems with the jury instructions given to the jury. We had highlighted a number of them, and of course at one point the judge on the substantive drug offense charged the jury as to cocaine when that substantive drug offense. Are all these charges being reviewed, all your objections, aren't they all being reviewed on plain error? Not all of them, Your Honor. The money laundering issue concerning the instruction on government agents. There was a defendant's request for that at the end of the case or at the end of the instruction. There was an objection, and then the judge gave a charge, and there was no further objection, but you think that makes that preserved error? Yes, sir. Okay. I'm not going to argue with you. I thank you for that. Okay. So as to the other aspects of the instructions, it is clearly a plain error standard, which is obviously a tough standard in this. Were you trying this case? No, sir. Do you know, and I'm going to ask the government too, did the district court, was he reading the charges? Was he reading the charges or was he just speaking the charges? Do you know? Your Honor, I don't know. My impression from reading it was that the judge was like winging it to a certain extent, especially with regard to his off-the-cuff money laundering explanations when he was confusing concealment with promotion, and he winds up charging the jury both ways on that, and that's part of what we were arguing here, that even if you find that there's substantial evidence on the money laundering conspiracy, the instructions were so messed up. I liked it when he said everybody must be a criminal. I've never seen that in an instruction. You know, I frankly, it's been a long time since I tried a case with Judge Boyle, and it's quite a ride whenever I have done that. A lot of government cooperators are criminals. In fact, I think that's a qualification. So in any event, you know, I think he was just sort of off-the-cuff to a certain extent, and, I mean, this is an example of what happens when you do that. I mean, you know, there wasn't, in my experience, the kind of elements of the crime being very carefully listed and then an explanation to the jury, and, you know, I don't have an explanation for that, but it left a lot of room for confusion in this case, which partly was cleared up or you could pull out certain parts of the jury instructions on money laundering or on the substantive offenses, but it really was a mess overall. Now, frankly, there wasn't, you know, a lot of objections to that, and so we are on a plain error. The main issue on the drug counts, as we raised in the brief, was that their failure to talk about the willfulness element, you know, that is an element in either the conspiracy or the drug distribution, and there really was not, I mean, there was a definition of willfulness, but not really a listing of the element. But he did, but he did talk about, he says that people have to willfully agree and knowingly means done voluntarily and intentionally and not because of mistake and accident. Why doesn't, isn't that sufficient? Well, you know, I think it's our contention that that isn't sufficient, Your Honor. I know, but I'm asking, I know that's your intention, but I'm saying why isn't that? Doesn't that make the point that it's not accident, that you mean to do it? Well, that makes it intentional. What makes it willful is a knowledge that it's illegal, I mean, that you're going to do something that you know is illegal. That's really the crux of willfulness. You can do something that you know you're going to do but not know that it is willful or willful in the sense that you know it's illegal, and that's the critical difference, I think, between those two. But he says the word willfully means the act is committed voluntarily and purposely with the specific intent to do something law forbids. I think that's in the general instructions on the definition. But why isn't that sufficient? I mean, that's why I wanted to focus on that. You said your concern about count one is that he didn't charge willfulness, but he did charge willfulness. Well, in my reading of the actual, I'm just about out of time, but my reading of the instruction on the drug offense itself was that he didn't include it. But this is on, we're talking about conspiracy now. Yes. Substantive, we're talking about the conspiracy, count one, conspiracy to distribute. But in his charge, that's at page 582, he says the word willfully means the act is committed voluntarily and purposely with the specific intent to do something law forbids with the bad purpose to disobey or disregard the law. Why isn't that sufficient in a charge? I'm out of time. Would you answer that for me, though, briefly? Well, it's close to being sufficient, but I will take a look at that and reply to it. 582, the last full paragraph. Thank you. Thank you. Ms. Fritz. May it please the court, Christine Fritz on behalf of the government asking that you affirm the judgment of the district court. The defendant was a longtime drug dealer who reinvested his drug proceeds in his business. He took these actions in coordination with Castillo and others. When the evidence is viewed in the entirety, there is sufficient evidence to support the defendant's conviction for money laundering conspiracy as well as money laundering substantive. Is there evidence that, is there evidence and what is the evidence that Tobias Castillo, I think I have it right, the gentleman and person in Texas, knew that drug proceeds were being used to buy those objects, which would be in this case the boat and the Fifth Avenue trailer that were then used to hide drugs? Your Honor, I believe that Cox owned the boat, so I'm not certain whether there is evidence of the purchase of the boat. But with respect to the purchase of the first trailer, the Fifth Avenue trailer, Agent Carachuri specifically states, and this is at page 221, he's asked about the arrangements that he participated in as to the purchase of the first trailer. And he specifically says none for the purchase of the first trailer. That had already been worked out. And then he's asked by whom? And his response is by Mr. Cox, Mr. Rojas-Diaz, and Mr. Tobias Castillo. That is evidence that is in the record. It is before the jury. And it's showing that the purchase of the first trailer was a collaborative effort between these individuals. When was that? When was it purchased? The first trailer? Yes. The evidence, the record. It is not clear when the first trailer was purchased. It's not in the record, is it? The date of the purchase? Yes. No. However, the inference, you can draw some reasonable inferences from the evidence. What's a reasonable inference from the fact that it had been purchased before? Well, first we have the pattern of the behavior here. This was a situation in where the defendant and Castillo and his other co-conspirators were engaging in increasingly large quantities of drug dealing. In the early years, it was sufficient to meet the defendant's demand simply to use the trailer and to put the drugs in the back of the trailer in quantities ranging, I believe, Cox testified, from about 20 pounds up to 700 or so. And then you see, as over the course of their business dealings, that becomes insufficient. So they use the boat because they need to accommodate this bigger dealing. And then we also know that the trailer, the Fifth Avenue trailer, was, I believe we can at least say that it was purchased prior to October 30th, which is when they begin their trip to Texas with the trailer. Which trailer? The Fifth Avenue trailer. And under these circumstances, where the individuals are using increasingly large vehicles to transport this, I think it's a reasonable inference that if they could have utilized the Fifth Avenue trailer from the very beginning, they would have in this case. But they advanced to the boat and then to the Fifth Avenue trailer, and we do have testimony that Tavares Castillo was involved in that. And then we have the procurement. Stop right there for a second. I know you're answering this question. Is there evidence that Tavares Castillo knew that drug proceeds were being used to purchase the Fifth Avenue trailer? Or any inference? Tell me what that is. There is a reasonable inference here. The defendant had been engaging in this drug trafficking relationship with individuals, with Tavares Castillo and his associates and other individuals who I believe had potential connections to the Mexican cartel. There's absolutely no evidence in the record that the defendant had any legitimate employment. Everything indicates that this was, that he was a drug dealer and that was his primary means of employment. We also know that whenever the defendant was using his couriers to send money down to Texas, it was understood that that was drug proceeds that were being used to repay Mr. Castillo for the drugs that had previously been fronted. That's not drug laundering. Paying off people who sell drugs for you, that's laundering? No, and that's not what was charged here. I'm simply responding to the question that there is evidence from which... The question Judge Shedd rightfully asked you was about the evidence of it being used to purchase the boats, the Fifth Avenue or any other boat. Was there any evidence that it was used, the proceeds were used for that? Oh, I apologize. I thought that Judge Shedd was inquiring about whether Mr. Castillo had reason to believe that it was drug proceeds. Right. Generally. Not generally, the purchase of the boat. Well, we have testimony from Cox, for example, on page 368, where Cox is discussing receiving the $19,000. And in a manner similar to how the drug proceeds were transported, Cox is asked, did he describe why he was giving you the $19,000 in cash? Cox's response was, I was to carry it to Papa. The next question is why, what was the purpose of it? Well, part of it was to help get another boy out of jail and to buy a camper. And then he goes on to explain that the purpose of the camper, like the purpose of the boat and the Fifth Avenue trailer, was to rotate these vehicles out and facilitate the transportation of the drug money from North Carolina to Texas and drugs from Texas up to North Carolina. What's the date of the conspiracy charge? The date of the drug conspiracy or the money laundering? Money laundering. The money laundering conspiracy is specifically charged as honor about, I believe it's November 2nd through November 10th. And the Governor, you chose to narrow it to that period, didn't you? Yes. You could have had it, I've seen it happen, it started three years ago, then all those things, but you chose narrowly, not even one month. Correct? That is correct. All right, go ahead. And in addition, there's other circumstantial evidence that we can look to and that the jury could have drawn reasonable inferences in support of. Name it. Name it specifically. Well, I think first we have information about the relationship between the defendant and Castillo.  This is evidence of the conspiracy or the evidence you're trying to say establishes for a jury's finding that there was somebody in that conspiracy as charged other than Cox? See, don't you have to get somebody other than Cox in that conspiracy? Yes. That's what we're asking you about. We focused on Castillo.  The one week conspiracy. Well, we have information about their business dealings, which is why, you know, we have a lengthy relationship between the two men. We know that the defendant and Castillo were frequently in contact. There's, if you look at the transcripts of the recordings, for example, the defendant. But now, wait a second. That evidence goes to a conspiracy for drugs. We're talking about a conspiracy of money laundering. Can you be specific to that? Unfortunately, we don't have a specific conversation where. . . You know what? I don't think it's a very effective argument for you to start with in response to a question, where's your evidence? Unfortunately. I don't think that's a good approach myself. You can do it if you want to. But you just need to stand on what evidence you have. And what is it? Well, again, I think we have the evidence of the relationship between these two men. There's indications that, as a general matter, the defendant and Castillo were sharing information and they were making decisions jointly. About what? About any number of things. For example. . . I think. . . I'm going to say it one more time and then I think I'll stop. Ask the question. Preface it with, you have to show evidence, in my opinion, the fact that the date of the conspiracy isn't determinative at all, in my opinion. You could have somebody in the conspiracy that's in the conspiracy as it exists before the charge date and continue to be in that conspiracy from that date forward. I'm sure that's your theory, and I think that's completely acceptable, in my view. But you have to show evidence as to the conspiracy charge on money laundering. There has to be some evidence from which the jury could find that there was somebody other than the government agent who's in that conspiracy who understands the drug proceeds that are being used. That's one of the elements. And you say you have that in what? You said something about some general discussion about get this trailer or what was it? Your best evidence on that point. We specifically have the fact that the defendant, Mr. Cox, and Mr. Tavares Castillo, were involved in the purchase of the Fifth Avenue trailer. And there's a statement by the agent to that effect. We know that Cox explained that he was provided the $19,000 cash to carry it to Papa, and that part of it was to get a boy out of prison, and then another part of it was to buy the camper. And we know that the camper fits into this general plan that they have established through their conduct that they're engaging in increasingly large business deals. Give us about convincingly large. Your argument is what? That because that was a pattern of conduct to buy something from proceeds, and you say the jury could find the only source of proceeds would be drug proceeds? And that that is your argument on how Tavares, as the conspirator, knew? Is that it? Is that it? I don't believe that that is the entire argument. What else is there? We also have, again, there's indications in the record that there was coordination between the defendant and Castillo regarding the travel of the monies, the travel of the drugs, the payment of certain monies to Cox, for example, the payment for a particular trip. And that we have evidence that these sorts of conversations were occurring between the defendant and Castillo Rojas, which indicates, again, that they were both very involved in the drug trafficking conspiracy and You have to show more than general involvement. That might suffice for a drug conspiracy, that they're generally discussing about drug amounts and all. That, in my mind, doesn't really go to the element of the drug proceeds being used for promotional drug money laundering. That's what I'm trying to focus on. But if you want to talk about something else, you can, as far as I'm concerned. I apologize that I'm not able to answer your question. It seems to me you should be able to. It's not a surprise you were going to be asked about that element, is it? No. And I think, again, going to the nature of it being proceeds. You don't need, let me say this now. You don't need to repeat the same argument. Unless you have something else to add, I think your time might be better spent on something else. For me, other judges may have their questions, but you responded to mine as best you can, apparently. Now, I think that what helps the government's position here, of course, is the standard of review. Any reasonable inference has to be drawn in support of the jury's verdict. And the government's position is that in addition to the information about the purchase of the Fifth Avenue trailer, the statements Cox made regarding the transportation of the money for the purchase of the second trailer, the Fleetwood trailer, we do have circumstantial evidence that goes to the quality of the relationship between these two men. And given that nature of the relationship, it would be reasonable to infer that Mr. Castillo was aware of and encouraged this reinvestment. We also know, for example, that Mr. Castillo and his associates were ready and prepared to receive these trailers, to modify them. I'm trying to understand why any of that helps you on this record. I believe that the jury can draw reasonable inferences from this information. And those reasonable inferences, for example, go to the quality of the relationship, the fact that there is evidence that these decisions were jointly made between the two men, that they were in frequent contact about various aspects of their business dealings, and that it would be reasonable to infer, given the purchase of the first trailer that Mr. Castillo was involved in and aware of, that it was likewise reasonable that he is involved in and aware of the second purchase of the trailer. And we know that there was no legitimate source of money. So your argument would be different if the defendant, in addition to being a drug dealer, was a stock schemer? And so he had two sources of revenue? Is that what it comes down to? You're saying because there's no evidence of any other source of income throughout the entire period of the drug conspiracy, a discrete transaction in the course of that drug conspiracy is sufficient to prove money laundering conspiracy? And is that? No, that isn't the entirety of our argument. What we have, again, in addressing the proceeds aspect, we know that the defendant did not – there's nothing in the record that he has a legitimate job. So it is reasonable to believe, and the jury was free to find – You didn't have to prove that, though, right? You keep saying there's nothing in the record, but a defendant doesn't have to prove anything. Certainly. But on this record, given the fact that the only evidence we have about the defendant earning money – The only evidence you produced. Yes. So how does that support a reasonable inference that there's no other income at any time during this entire period? You don't have his tax returns. You'd have to have some positive evidence that you have searched the normal conventions of reporting income to say that he doesn't. But let me ask you, in this case, I think you have many problems in this case, but one is that even the theory of money laundering is sort of counterintuitive because it was interesting that it struck like a thunderbolt to the judge. I think somebody said, well, I get it now, like laundering or whatever. It's not – even the purchase wasn't to clean it up. It seemed to me that the evidence, even the drug part, where they were using these things to retrofit it so it could be a carrier for drugs, that's far from laundering it, making it clean. Normally, there's cases where you take the money, you buy your brand-new nice Mercedes, and you drive it around for doing other things, and it's clean, nice title. Here, you're adulterating it for purpose of drug currying. It's almost in a sense that it's counterintuitive to laundering because you're doing anything but laundering it. You're dirtying it. You're making it susceptible to being interdicted and causing more problems. You see what I mean? Do you understand what I'm saying? I do see what you mean. So it's counterintuitive to laundering among many problems with the evidence you have. Isn't it? No, it isn't counterintuitive to laundering. Why isn't it? And why isn't it in this case? This was charged as promotional money laundering. So the very purpose of the money is to reinvest to further the unlawful drug activity. Now, I appreciate it. Well, it's not the money. It's what you convert the money into that's the laundering aspect. You know you're going to get profit from it. I mean, that's that. It's not laundering if you took the money and just sort of put it on your mattress and just held on to it, right? You're just holding it. Laundering is doing something, a transaction to clean it, to wash it through so that one would not be able to determine the illegal source of it. So I'm saying they're doing anything but that. They're putting it into a further compartment or vehicle or whatever for contraband. You could almost say it's really not laundering. It's really necessary to complete their modus operandi, the way they operate, isn't it? Because, you know, you buy the boat, you fix it up so you can put drugs in it and cool it and all that kind of thing, and then you do that, you retrofit it and you bring it back here. I don't want to drive. I don't want to go sailing. I just want to be a drug courier with this. It would meet a tax-deductible thing if it was legal because it would be used for the purpose of business. It would be a deductible purchase. But go ahead. Well, I do think Your Honor is keying into there are problematic. Listen, you better answer that question boldly if you know the answer to it. What's your answer to his question? When he goes, this doesn't look like money laundering, your answer is what? That it looks like promotional money laundering. Promoting what? Promoting the drug conspiracy. And this is not concealment money laundering, is it? No. Although the judge charged concealment money laundering, didn't he? The judge charged both. I didn't ask you that, did I? Yes. I said he did charge it, didn't he? He charged concealment money laundering. Yes, he did. Why didn't somebody stand up at that point and say, good gracious, Judge, it's nothing to do with washing money, washing these proceeds, it's using them for continued drug activities. Did the government do that? No one did that. I asked, did the government do it? No. Doesn't the government have an obligation to get it right? Yes. Now, may I ask one question to take this over? Sure. What happens in this case, did you, as to count one, the conspiracy on drugs, distribution, forget money laundering, did the court charge willfulness? Yes. What do we do in a case if count one is appropriate and the rest are subject to plain error that we recognize? What's the result of the trial? What do we do with that? Count one is fine, but nothing else is. What happens then? You would affirm the conviction on count one. And do what? Send it back for the judge to re-sentence or to reconsider or no re-sentencing or what? He'd have to take into account at least special assessments on the other counts, wouldn't he? I think it depends on what problem Your Honor is identifying. If you're saying that this, assuming the court finds a sufficiency problem, those counts would be done. But as I understood you... What about charging problem? The charging problem, that would result in a remand for a retrial on those counts. I see that my time is up. Thank you, and I ask that you affirm the judgment of the district court. Thank you, Ms. Fritz. Hey, police court, let me try and respond to a couple of the points that you were asking counsel for government about. The counsel for government... Can you respond in terms of concealment? It was charged in this case. The jury was charged with that. Yes, sir. In fact, the judge two or three times talked about concealment. There was a discussion ultimately about promotion, but he kind of... But what was the charge in the indictment? The charge in the indictment... The indictment was promotional. Promotional. Yes, sir. So the indictment charged, but the judge on his own charged on concealment. Yes, sir. He also charged on promotional, too. He talked about promotional money laundering. The whole procedure that was involved, the jury instructions I think is an example. But I'm asking you, and I'm going to let you get back to... No, I think part of this for both the government and the defense counsel in this case was the judge did not give counsel a copy of written instruction. I didn't ask you that now. That's not what I asked you. I said didn't he talk to the jury about promotional money laundering? There was a mention of that along the way, but I think the overall flavor is promotion. I'm not asking you about the overall flavor, because we can read that and look at that, too. Yes, sir. We can all agree, I think, if you read the record, he did in fact charge on concealment money laundering. Yes, sir. And I think we can probably all agree that that has nothing to do with this case, correct? Yes, sir. But it's also fair to say he talked about promotional money laundering. Yes, sir. You just don't think it was sufficient or it was confusing or whatever. That's right, and that is a real problem in this case. The court asked counsel for the government about what evidence there was about Correa knowing about this particular trailer, and there's no evidence in this record about that. No, no, I didn't ask that question. Yes. I asked a question about him knowing about purchase of other items that had been used like this trailer. And I don't think there's evidence of that either, Your Honor, but ultimately it would come down to the government's argument. I think the government's argument on the evidence we have in this case is if he's a part of the drug conspiracy, that's enough to infer that he's a part of the money laundering conspiracy. No, that's not what she said. What she said was based on the evidence that this is what she said, that this is what she said, based on Mr. Tavares Castillo's involvement with the Fifth Avenue trailer and how that was obtained, and when you combine that with the fact there was no other money source in this case but illegal drugs, that would be enough for a reasonable inference on the Fleetwood. The problem with that is the evidence does not show that that trailer was money laundered, I don't think. There's no evidence as to how it was purchased. That's right. But I say to me that the gravamen of her argument is that, and I think she said it, Ms. Fritz said it two or three times, due to the quality of their relationship in drug trafficking, it's a reasonable inference to be drawn that they would have known that these things were appropriate, almost, I don't know, foreseeable. That's tantamount, I think, to saying, well, he's guilty of anything that the other people do because he just knows a lot about it. Right. The quality. Right. The relationship. It's quality. Now, on the willful. Patrick, if you prevail in this court on both money laundering issues, the sentences are going to change, right? As long as the drug charges are upheld, yes. I mean, it's all concurrent. It's all concurrent, and it's 30 plus 20 concurrent. That's right. You've got 30. That's right. And, you know, that's why we are pressing the issues on the instructions on the drugs. I mean, it's clearly substantial evidence on the drugs. So what are you pressing on the drugs? Well, you are correct that there was a definition of willfulness. The problem on the conspiracy was that, you know, there wasn't really a separate conspiracy instruction for the two types of conspiracies being alleged. He kind of incorporated it all together. Our argument is basically that, taken overall, the instructions on conspiracy were not clear enough to instruct. I don't know about that. What you said was you didn't charge willfulness. That's what you argued. Yes, sir. But he did charge. By the way, let me say this. As you go back and read it through. Let me say this to you. Yes, sir. I understand your tactic. I certainly do, because you know what we know, which is what Judge Davis said, 30 years on that and everything under it. Honestly, it's hard to say, but those sentences don't really matter. And so you're working on that willfulness, but that's what you asserted. But it is – I'm not going to make you say anything more, but it does appear to be he did charge it in the record. Thank you, Your Honor. I hope you – Do you think you have an argument that the overall manner in which the trial was dealt with in terms of jury instructions had an impact on all of the charges in the case in that sense? Do you think you have an argument? Even if you're wrong on the willfulness, in terms of like, the steel epipoles, did they consider concealment, since they were charged on it? We know this clearly is a promotional case, but they were charged on it. Is there an overall effect? My reading, Your Honor, is that, you know, this was a very, very sloppy set of jury instructions. There were multiple problems. If you read through it, it's not the common one I've had on either drug conspiracies or other things. And at the end of it, I don't understand how a jury could reasonably understand what they were doing on the various charges, given the amount of confusion in the jury instructions and the way they were misstated on some things and then everything compressed into one and not adequately delineated what the jury needed to find in the case. Thank you, Your Honor. Thank you. Mr. Patchett, I note that you're a court opponent. I just want to say on behalf of the court, we appreciate your service that we couldn't do this without your able representation taking these cases, and we appreciate that. And Ms. Fritz, also, we note your able representation in the United States. Thank you. With that, we're going to come down to Greek Council and proceed to our final case of the day.
judges: Roger L. Gregory, Dennis W. Shedd, Andre M. Davis